We'll turn now to argument in No. 20-4106, Cornelio v. State of Connecticut. Mr. Cornelio. Yes. May it please the Court. Good morning, Your Honors. I'm James Cornelio, the pro se appellant in this case. Given its greater importance to many of us registrants, I intended to focus on the First Amendment and ex post facto issues raised in my group. But given not just my conviction that Judge Meyers' decision on my Fourth Amendment claims should be reversed, but as recent events have once again confirmed my belief that my Fourth Amendment claims' rights remain at risk, I'm going with the few minutes I have to focus on that issue. Before addressing the legal issue of probable cause, let me beg the Court's indulgence to provide a little context. As noted in my district court brief, in July 2015, about a year prior to my arrest for the e-mail notification felony at issue here, I was arrested because the Connecticut Sex Offender Unit so claimed that two of the quarterly address confirmation letters sent to registered sex offenders returned by me beyond the 10 days allowed under the relevant statute. When in that case, I pointed out to the State's attorney handling that. First, they had approved a warrant even though the parties seeking that warrant so had no authority under the relevant statute to do so. Second, so had implemented a three-letter 30-day protocol, which they had, in fact, followed the prior laid letters for me. Third, Connecticut's highest court in the TRD case referred to in my brief had, in as many words, less compliance within the 30-day protocol period as carrying any noncompliance with the 10-day statutory period. Fourth, I hadn't, in fact, moved. Fifth, I would not accept any plea deal the State's attorney on November 6, 2015, arranged for the case to be dismissed. On my arrest at issue here, the record shows that Soe sought the warrant in June 2016, which is more than seven years after an e-mail I had sent to Soe, only the first of many e-mails from that very e-mail address. Notably, though, the warrant was sought less than three weeks after I informed the State's attorney that I intended to pursue a Fourth Amendment claim for that 2015 late mail arrest, which plainly would raise the approval of a warrant sought by a party not entitled to do so. That State's attorney and the same State court judge approved both warrants. Unsurprisingly, given the facts, Judge Meyer acknowledged that Soe had acted with malice in seeking my arrest, but he also determined they had arguable probable cause, though, quote, unquote, only barely so. He decided that my exchange of e-mails with Soe over many years using that unreported e-mail address was legally inadequate, as I didn't give them that notice on the appropriate form. Moreover, to the extent I did give them notice on the appropriate form, a website for a book I wrote, which website contained my e-mail address, that, too, was inadequate. For as opposing counsel has argued, the police have no duty to make any inquiries to whether a citizen has actually committed the felony offense for which they sought a warrant, even one unlike the example offered in opposing counsel's report. Is it arguable that if there's a separate registration requirement that you have to turn over the e-mail address, is it at least arguable that you should have done it in a different form than simply e-mailing them from that e-mail address? Arguable that I should have done. Isn't it? I mean, you're saying the district court just said it was arguable probable cause. Arguable probable cause. That is plausible that the statute required. Right. Why isn't that even plausible? I think that when the – because of the issue of intent, and I'm going to go right to that now. Beyond that, beyond what I just argued, and notably, Judge Meyer, for whatever reason, leaves unaddressed where the probable cause fails. Because I argued in my district court papers, I obviously had no intent to disregard my reporting obligation. Opposing counsel, however, does offer one census explanation, which doesn't claim that intent is not an element of this felony, but claims instead that I'm confusing the fact that I wasn't, quote, unquote, hiding my e-mail address from settlement for my affirmative obligation to report it. In other words, regardless of my motive, I'm guilty. Your Honors, in how many other felony offenses, having comparable harm to not reporting an e-mail address is the undeniable evidence of the lack of intent to commit that felony ignored in determining whether to arrest a citizen. To be frank, opposing counsel in a determined effort to justify finding a probable cause ignores the fact that when a citizen is obligated to do something, here, to report an e-mail address, rather than when they're obligated not to do something, like murder, rob, or rape, the clear evidence that I was not hiding my e-mail address is the same as my not having intent to commit the felony. Consequently, Your Honors, this Court, after giving due consideration to the issue of intent, which was lacking in the lower court's analysis, should find that whether or not one believes that those who approve the warrant were unbiased, no reasonable officer, no reasonable officer could believe that probable cause, arguable otherwise, presumptive or not, existed for my arrest. And that's true even without considering the overwhelming evidence that those officers or anything other than objectively reasonable. And the fact that there was no harm done to anyone or anybody, and as a result of my failure to report my e-mail address on any particular form, and that not only did so know what the law required me to reveal, but they knew it precisely because I had revealed it to them. Beyond Soe's obvious fallacy seeking my prior arrest, there's what can only be described as a damning motus as described in the record, behind their failure to arrest me while I was in their custody for a warrant they had sought, and then the absurd claim that my mail was, quote, unquote, undelivered. And as for that recent event of which opposing counsel is well aware, their sudden decision after 13 years to switch my obligation to update my photo for the Sex Offender Registry from something straightforward and periodic to something far more arbitrary and far more demanding and far more subject to abuse of me. Your Honors, I'm under the sum of so for what remains of my life. Given the onerous overreach of so many sex offenders' laws, and so it's obvious how dare you vindictiveness, which is enabled by those laws, I ask you to confirm that the Fourth Amendment rights of citizens, even as deeply flawed citizens, are inviolable by remanding to the district court for a trial that merits my Fourth Amendment claim. Thank you very much, Mr. Cornelio. You have reserved time for rebuttal, so we'll hear from you again. Your Honor, I have addressed the First Amendment. If another five minutes, I can give it. I think we'll probably have questions for you about that issue on rebuttal, but let's hear from the government first, and then we'll hear from you on rebuttal. Mr. Dearington. Good morning, Your Honors. May it please the Court, my name is Robert Dearington, and I'm an Assistant Attorney General for the defendants in this case. The judgment of the district court should be affirmed because Detective Janey is entitled to qualified immunity for the plaintiff's false arrest, malicious prosecution claims, and because the plaintiff has failed to show that Connecticut's sex offender registration laws are unconstitutional. Specifically, Connecticut's quarterly address verification law does not violate the ex post facto clause because the law was enacted prior to the plaintiff's crimes and convictions in this case. Connecticut's law that requires the plaintiff to register his e-mail addresses, instant messenger addresses, and similar internet communication identifiers does not violate the First Amendment because the law passes intermediate scrutiny. So you agree that there is a First Amendment interest at stake, that there is some harm to his ability to engage in anonymous speech. So you agree that intermediate scrutiny applies, right? Yes, Your Honor. Courts seem to apply intermediate scrutiny across the country, and that does not appear to be an issue at stake. So when we do intermediate scrutiny, it has to be that there's an important government interest and that the law is narrowly tailored to serve that interest, or it doesn't restrict or burden substantially more speech than necessary to further that interest, right? That's correct, Your Honor. So is that really an appropriate determination to make on a motion to dismiss? I mean, can you tell from the complaint that it doesn't burden more speech than necessary to serve that interest? Yes, Your Honor, and the district court does this, and the court relies on many cases explaining the reasons for having such laws. And some of these reasons are very obvious. Also, some of them are mentioned in some of these cases cited by a district court that this law advances the important governmental interest of deterring sex offenders from grooming and recruiting potential sex abuse victims online, and furthermore, it serves as an important tool for law enforcement. So how does it do that? How does it prevent sex offenders from grooming people online? Yes, Your Honor. It serves as a deterrent because when sex offenders know that law enforcement has— So it's kind of an extra deterrent. It's kind of like, well, it's illegal to groom people online or to engage in that kind of conduct, but since they know that the government has their email address or some other kind of information, they're going to be extra deterred from doing it. Is that right? Well, I hope that there would be a deterrent in the first place, Justin, and not— No, right, but that's kind of my point. I would think that there would be a deterrent in the first place. So if, in fact, your burden is to show that this is necessary to serve that governmental interest, why is it necessary for you to have a list of everybody's Internet identifiers to provide that deterrent effect if, as you just said, there already is a deterrent effect based on just prohibiting the conduct? Well, Your Honor, the law that's in place should serve as a deterrent, but clearly there are individuals out there who, despite the criminal law being in place, are still recruiting and grooming individuals online. So it's important that the government have this additional deterrent. So do we have evidence in the record? I mean, has the government made a showing that actually this does that work, that actually the government having the Internet identifiers on record has deterred anybody from engaging in conduct they otherwise would—illicit conduct they otherwise would engage in? I don't believe there's anything in the complaint, Your Honor. However, the district court does— Right, so it's on a motion to dismiss, and we have to rely on the complaint, right? So, like, if we're just sort of speculating that maybe it provides this extra deterrent effect, doesn't that sound like we're just applying a rational basis test to the law? And doesn't intermediate scrutiny require more, like a stronger showing from the government? Your Honor, I believe the district court—and I can find them in my brief— that the district court does rely on numerous cases and explanations in the cases regarding the history of Megan's Law and these requirements for sex offenders showing that there is an important governmental interest in deterring these individuals from— No, I understand. So I'm acknowledging there's an important government interest. I'm asking about the tailoring, whether this actually— The Supreme Court has said that just because there's an important governmental interest in the abstract, it doesn't mean that every law advances that interest or that it's necessary to further the interest. So I'm asking what extra work this law does to actually further that interest. Do we have anything in the record or any kind of showing that actually having turned over Internet identifiers has deterred somebody from engaging in conduct they otherwise would have engaged in? I don't believe there's anything alleged in the complaint. It's just the district court that relies on cases giving the history of this and the rationales for having— So if there's nothing in the complaint, then shouldn't the district court have asked for some evidence? Like wouldn't it have been inappropriate to make this determination on a motion to dismiss? I don't believe so, Your Honor. I think given the history of these laws and the case law, the breadth of case law that's out there with these explanations, I think that was sufficient for the district court in making its determination. However, Your Honor, in terms of the tailoring, I think that's where the other part of the law kicks in, that this law does not substantially burden more speech than necessary because the law itself states that such information shall not be a public record and furthermore shall not be disclosed except for law enforcement and security purposes. So I think that tailoring— What it says is it shall not be a public record except that the Department of Emergency Services and Public Protection may release such identifiers for law enforcement or security purposes in accordance with the regulations. How is that different, materially different, than the California law in Doe v. Harris? What are the regulations? How is this something different than what the Ninth Circuit said was too broad in Doe? Yes, Your Honor. In the Doe case, the law, California's law that was at issue there, contains an affirmative disclosure toward public disclosure when necessary for public safety. In contrast, the Connecticut law does not contain any provision for disclosure to the public. In fact, it states that this information shall not be a public record and shall only be disclosed for law enforcement and security purposes. It says it shall not be a public record except that. What does that mean? In fact, it says except that the Department of Emergency Services and Public Protection may release such identifier for law enforcement or security purposes in accordance with regulations adopted by the Department. Has the Department ever adopted those regulations? My understanding is that there are no regulations in place at this time. So does that mean that it just can't be released, or does that mean that you could operate under the statute directly and just determine what law enforcement or security purposes are? I believe the fact that there's no public disclosure authorized in the statute, on top of the fact that it's limited to law enforcement and security purposes, means that it just must be shared among law enforcement. Well, you know, the California law said that it could be disclosed to the public if there was a security interest. So could the Department adopt a regulation that said if it's determined that there's a security interest with respect to a particular sex offender, then we could release the Internet identifiers to the public so people could be on the lookout for that person's online activity? I don't know, Your Honor. All I know is that there are not any regulations. My understanding is there's no regulations in place right now, so I wouldn't want to speculate as to what those regulations are. Right, but if you don't know the answer to that question, it means that the statute does not, in fact, guarantee that the information is not going to be released. I think in the reading of it, and I know that as a practical matter, this information is not released to the public. It's shared among law enforcement, state law enforcement, local law enforcement, for the purposes of criminal investigations. Well, regardless, even if it were the case that it's only going to be held by law enforcement, it sounds like you don't disagree that just the government collecting Internet identifiers still has a chilling effect on speech. So you would still have to show that it really does further a government interest, right, even just holding it by law enforcement. I think so, Your Honor, and I apologize. Can I ask you just about maybe this is an overbreath problem? So this applies to all sex offenders, right, even ones who did not engage in grooming or any Internet activity or anything. They did something with respect to adults or statutory rape or something, right? That's my understanding, Your Honor. So does it really make sense to require the Internet identifiers to be released of somebody whose crime had nothing to do with Internet use? I think it serves that function, Your Honor, and this goes back to the deterrent. It could also include people who were grooming individuals online. However, it does include all registered sex offenders in Connecticut. Do we know the proportion of sex offenders to whom this law applies who engage in grooming online or who engage in online activities? I don't have that information, and I don't know that information. So can I ask, could the state of Connecticut apply this to other categories of people? So if somebody was convicted of a gang-related offense, we could say they have to turn over their Internet identifiers to the state so that the state could track gang-related activity online on social media or something? Would that be permissible? I don't know, Your Honor. I haven't looked at that. But I guess my question is, is there something unique about sex offenders since you don't know the proportion of sex offenders that actually engage in online activities that makes this justified with respect to them, but it wouldn't be with respect to other categories of people who commit crimes? My understanding is that some of these cases that go into the histories of this law look at the facts and the fact that there is a propensity to recommit these crimes. So it may be— I understand you're saying a propensity to recommit, but you also just said that there's sex offenders who haven't actually engaged in a crime involving online conduct. So if they're going to recommit, maybe they're going to do the thing that did not involve the computer. I guess my question is, is there any evidence that there's a propensity among sex offenders as a class that they're going to engage in almost an online conduct? I think that I would have to review these cases that the district court went through regarding the history of this and the propensity to commit crimes online, but I don't have that information right now. Okay. With regards to the ex post facto challenge, I think that it's clear that the quarterly adverse verification requirements were enacted prior to when the plaintiff committed his crimes and offenses. I think that—and also with regards to his Fourth Amendment most prosecution challenge, the evidence demonstrates that Detective Chaney was entitled to qualified immunity. She applied for an arrest warrant application. It was approved by her supervisor. It was signed off by a prosecutor. It was signed off by a superior court judge pre and presumption that it was objectively reasonable for Detective Chaney to believe that there was probable cause to arrest the plaintiff. Unless the court has any further questions, I rest in my grief. What about this question of intent, that the fact that he emailed from the email address shows that he did not intend to conceal his email address? The issue of intent, Your Honor, is that he has an affirmative obligation to register his email address with the Sex Offender Registry Unit. He was aware that this law existed. He was reminded of it every time he received—when he was registered as a sex offender and every time he received a quarterly address verification form. He was reminded of this affirmative obligation, and the intent was that he chose not to register his email address with Connecticut Sex Offender Unit. The law doesn't say you can't hide it. It places an affirmative obligation on the sex offender to register it, and that he did not do. Okay. Thank you very much, Mr. Dearington. We'll hear back from Mr. Cornelio on rebuttal. Thank you, Your Honor. Your Honor, I'd first like to point out that I was arrested because of this First Amendment, this obligation to report internet identifiers. And, Your Honor, you went exactly to the point I was going to make about the purpose of it. And I would argue that the Supreme Court itself in Packingham, when it allowed sex offenders to use social media platforms, never mentioned that this obligation to report your internet identifier might mitigate the potential risk to people using Facebook and other social media platforms. Well, the Supreme Court said that if the government had raised that argument, that that would be a possible justification for the law, and the Supreme Court didn't reject that argument, did it? Well, Your Honor, you know, it's amazing to me that the ACLU didn't. You know, I'm surprised that didn't get raised. I am astonished that it didn't get raised. But in any event, I also think that, as you were kind of pointing out with respect to gang rape, my argument would be, you know, you could also have, you know, I think that the way I wrote it here is to believe that any register intent on using an identifier for an illicit purpose would provide that identifier to the police because of this law is the same as believing that a bank robber would inform the police which bank they were going to rob because there was a law requiring them to do so. Of course, there's no First Amendment. Yeah, but that just means that the law is ineffective. I mean, you might say, well, we have felon in possession laws, but of course felons are not going to care about carrying a gun when they're – I mean, you know, you could say that there are lots of people who aren't going to comply with the law. That's not an argument for saying that the law is unconstitutional. Well, I just think that if you can argue that it doesn't have any purpose, you've got to wonder just how much of a burden you should be placing on sex offenders as a result that there's really no purpose. Well, you don't deny that there is an important government purpose in preventing predation or grooming or illicit online activities. Well, those are the words of the statute in a lot of cases, Your Honor. But again, I don't think that there's any practical evidence that it's ever happened. I can't imagine a registered sex offender giving an Internet identifier to the police and then using it for an illicit purpose. It's just – But can you imagine a sex offender who did comply with the law and gave Internet identifiers to the authorities, it actually helping to deter illicit online activity, the fact that the authorities have that information? Is it helping to stop it? Like would it deter the illicit conduct if, in fact, the government had that information? I don't see why, especially nowadays with the way the Internet is basically – the cyberspace is now more real than the real space. So everybody is online constantly. And if somebody is intent on using online to try to groom anyone, they're not going to tell the police in advance, I'm using this Internet identifier to groom someone. So I put that question about the gang members to the state, and he didn't have a clear answer, but I guess I would ask, why wouldn't the state be able to do that? Maybe the legislature would say, well, a lot of gang activity takes place online, and so we're going to require everybody convicted of a gang-related offense to turn over their social media handles and e-mail addresses and whatever to the state. Would that be impermissible? I agree, it would not be. It would not be? It would not be permissible? Every gang member needs to tell them their Internet identifiers. I don't believe it should be. I mean, at what point do you stop at that? It's not just gang members. It's anybody who might do something illegal. You've got to, okay, you might do something. Tell me your Internet identifiers. I guess I assume your position would be that they would at least have to come forward with evidence that there is a special interest in that class of people and online activity. Well, that's always going to be the argument, that we have a special interest. Now, to the extent that there is a special interest in saying we're going to prevent, I just don't think that it works. However much you might say there's a special interest, it just doesn't make any practical sense. But I can tell you that it does chill. Just think yourself, Honor. If you had to tell every time you had an Internet identifier, you had to go tell the police, you don't think that's going to chill your First Amendment rights? I mean, I don't care what you're using it for. I'm not afraid. Whatever I might do, and I write and I try to, you know, I communicate through the Web. Now, every time I get a— Actually, so let me ask you about that. If, in fact, you are writing and doing all of this communication, then in what way has your First Amendment right been impaired? Well, I'm not doing it anymore. I'm not doing it anymore. I wrote a book 10 years ago, and I used the Web quite a bit then. And now I'm frozen in place. Oh, and this requirement kicked in. It scares me. I've been arrested because of that. I see. Okay. And, you know, the other issue about whether or not there's the comparison with the Harris case and the concept that whether or not it's a public record or not, I agree 100 percent with you, Honor. The fact that it's permitted under the California law and not prohibited under the Connecticut law is exactly the same. Who says that a Connecticut law enforcement agent who says, this would help me in tracking down some sort of crime, would not release it to whomever they thought was necessary in order to go and track down that crime? So I agree 100 percent. Permitting is exactly the same as not prohibiting. Connecticut law enforcement would not be prohibited from releasing it to anyone or anybody they thought would help in their investigation. The final point I wanted to make on the ex post facto clause, it's, you know, the Smith court was the first case in ex post facto jurisprudence to not just say, consider whether or not a, can I beat it, Your Honor, because I'm going to be stumbling. Okay, let's just, that will be your final point, because we're over time. Okay. I argue that anybody, no matter when convicted, should have it, because I consider the Connecticut law to be punitive. And then as counsel asked, how can that be, though, given that under traditional ex post facto jurisprudence, the fact that the law was enacted prior to my conviction means that I'm not entitled to the benefits of the ex post facto clause. It's because of the distortions, frankly, caused by the Supreme Court to judicial ex post facto jurisprudence when for the first time ever, the Smith court went beyond ruling that the imposition of a sanction of prohibition didn't violate the ex post facto clause to ruling that the imposition of affirmative obligation also didn't violate that clause. The problem with this ruling is that sanctions and prohibitions, by their nature, are immutable and would be applied exactly the same to everyone everywhere. While obligations can, as illustrated in my brief, compared to the Alaska law issue in the Smith case to the Connecticut law issue here, do vary dramatically. Opposing counsel and superficially pooh-poohing those differences fails to seriously grapple with the four specific ramifications I outlined in my brief, which was solely because of the uniquely harsh character of the law, which, unlike the Alaska law, has not just felonized nothing more than the delivery of late mail, but has done so on a strict liability basis. The Connecticut law goes far beyond any approach to confirming the residence of sex offenders, the purpose after all of these laws, that can anyway be characterized as non-punitive and regulatory. So I ask this Court, at what point does deference to the traditional understanding of ex post facto jurisprudence, that a citizen is not entitled to ex post facto protections, once a law is determined to be regular and not punitive, become untenable? Once it is acknowledged that Connecticut's mutant version of the regulatory Alaska law has enabled unnecessarily harsh and punitive methods in the alleged service of that regulatory purpose, this Court should rule that either the law be rewritten to conform to the non-punitive Alaska law, or that no citizen, where the law was not considered as part of their punishment, at his or her trial be subject to it. Thank you very much, Mr. Cornelio. The case is submitted, and because that is the last case on our calendar for today, we are adjourned. Court is adjourned. Thank you. Thank you.